Ronald R. WELLS, Appellant
(Plaintiff below),

v.

JEEP CORPORATION and Jeep Sales Corpo-
ration, Appellees (Defendants below),
and
Elden M. Wells (Defendant below).

No. 4388.

Supreme Court of Wyoming.

March 5, 1975.

Mayne W. Miller, Casper, for appellant.

G. Joseph Cardine of Cardine, Vlastos &
Reeves, Casper, for appellees.

Before McEWAN, C. J.*, and GUTH-
RIE, McCLINTOCK, RAPER and
THOMAS, JJ.

GUTHRIE, Justice.

Plaintiff, appellant herein, filed his com-
plaint to recover for injuries suffered in
an accident near Ten Sleep, Wyoming.
He joined as defendants Elden M. Wells,
his father, who is not involved in this ap-
peal, and Jeep Corporation and Jeep Sales

* Now Judge of the Fourth Judicial District.

Corporation. Plaintiff asserted his right to recover against Jeep Corporation and Jeep Sales Corporation for negligence in the design and manufacture of the vehicle involved in the accident, because of the positioning of the brake and accelerator pedals, claiming the vehicle was not safe for its ordinary and intended use. He asserts that Jeep Corporation and Jeep Sales Corporation are strictly liable to him for the damages he suffered under the circumstances in this case and for a breach of warranty.

Defendants Jeep Corporation and Jeep Sales Corporation, appellees herein, filed a motion for summary judgment, which was sustained by the trial court; and it is from that judgment that this appeal is prosecuted. The facts, insofar as we deem them material, are as set out.

Elden M. Wells, who lives in Ten Sleep and who operates a repair service and service station there, was the owner of a 1972 Jeep Wagoneer purchased shortly before the time of the accident. On October 28, 1972, plaintiff in company with his father drove easterly from Ten Sleep to go elk hunting. While proceeding up a rather sharp grade on which was located a gate, plaintiff got out and opened the gate. The Jeep was driven through the gateway, and after a short time the father, anticipating that plaintiff was having trouble closing the gate, and in order to more clearly see what was happening, put the vehicle in reverse while the motor was idling—this being the only way the backup lights would turn on—and applied the so-called "parking brake." He saw his son was having trouble with the gate and started to get out to help. He stepped from the Jeep and while his left foot was planted on the ground noticed the Jeep was moving backward toward the gate and plaintiff. The father then put his right foot inside and upon the brake pedal while he rested his weight on his left foot outside the Jeep, and in pressing down the brake also pressed upon the accelerator, which caused the vehicle to move backward and hit plaintiff. The father was wearing wide hunting boots,

which were described as too wide to be placed in a stirrup. This Jeep had the same brake and accelerator pedal arrangement as all those manufactured in 1972. The brake pedal was approximately seven inches across and covered with a rubber pad, and when depressed engaged the brakes and stopped the vehicle. The accelerator is less than two inches across and is also covered with a rubber pad, and is located to the right of the brake pedal. There is approximately a two-inch interval between the brake pad and the accelerator pad. Defendant Wells said he was half in and half out of the Jeep when he felt it moving, and had half his back on the seat, and was in such position that his right foot was "cocked on the wide pedal," and said his toe probably caught the gas pedal on the top. We do not understand exactly what he means by the word "cocked," but taken in context with his other testimony it must mean his foot was not flat. He agreed that if his foot had not been so "cocked" he would not have hit the accelerator. He further said that had he had time to get "clear back in" it would have been all right, or had he hit the brake pedal more to the left it wouldn't have happened.

We find in the record an affidavit of the witness Crawford, as an expert on behalf of the defendants, which negatives any defect in material, metal, or construction, or any latent defect. Crawford also expressed the opinion that there was no defect in the design but the braking system was reasonably fit for its intended use and was a standard design. Plaintiff counters this by an affidavit of the witness Novotny, which concedes that all 1972 Jeeps were so designed, and also sets out there was some change in the 1973 and 1974 models. Plaintiff places reliance upon the statement in that affidavit that "the way in which the accelerator pedal was mounted upon the floor and the nearness of its position to the brake constituted a defect unreasonably dangerous for the intended use of such vehicle." In his opinion the position in this design would allow a driver's foot to slip off the brake and de-

press the accelerator and it was easy for a foot to overlap both the brake and accelerator at the same time, which contradicts Mr. Crawford, but he makes no denial that this was a standard design. Insofar as Novotny's affidavit asserts that the positioning of these pedals was a design defect and that it was unreasonably dangerous for the intended use, this is obviously a conclusion and a categorical assertion of an ultimate fact. This cannot be used to defeat a summary judgment, Maxted v. Pacific Car & Foundry Company, Wyo., 527 P.2d 832, 834; nor does it constitute such proof of facts as would give rise to a standard of conduct or duty. Appellant suggests that Novotny's affidavit setting out certain changes made by Jeep in the accelerator and brake arrangement in the 1973 and 1974 models would in some manner support his claim. These facts are not evidence of antecedent negligence or that Jeep was negligent upon this occasion, Mobberly v. Sears, Roebuck & Co., 4 Ohio App.2d 126, 211 N.E.2d 839, 849; Tyson v. Long Manufacturing Company, 249 N.C. 557, 107 S. E.2d 170, 174, 78 A.L.R.2d 588; Burr v. Green Bros. Sheet Metal, Inc., 159 Colo. 25, 409 P.2d 511, 515; Cox v. General Electric Company, 6 Cir., 302 F.2d 389, 390. Thus this statement in the affidavit in no way assists the appellant.

■■ Certain general principles are applicable to this and similar cases. The manufacturer is not an insurer and has no duty to make accident-proof equipment, or as one court has described it, "foolproof," Stevens v. Durbin-Durco, Inc., Mo., 377 S. W.2d 343, 346–347; Oropesa v. Huffman Manufacturing Co., 9 Ohio App.2d 337, 224 N.E.2d 530, 532; Schneider v. Chrysler Motors Corporation, 8 Cir., 401 F.2d 549, 557; 1 Hursh, American Law of Products Liability, § 2:59, p. 240 (1961). "Proof of nothing more than that a particular injury would not have occurred had the product which caused the injury been designed differently is insufficient to .establish a breach of the manufacturer's or seller's duty as to the design of the product," Farr v. Wheeler Manufacturing Corporation, 24

Mich.App. 379, 180 N.W.2d 311, 315; 2 Hursh & Bailey, American Law of Products Liability 2d, § 9:17, p. 301 (1974); 63 Am.Jur.2d, Products Liability, § 73, p. 79.

The briefs of the parties hereto were both filed prior to our decision in Maxted v. Pacific Car & Foundry Company, supra, which discusses the question of defective design and the necessity of establishing first the standard of care and duty, and second whether the manufacturer departed therefrom, 527 P.2d 835, and is applicable in several particulars to this case. In Maxted we held that to recover for a defective design a plaintiff must, by proof of facts, establish a standard of conduct; and that once the same is established there must be proof that the defendant departed therefrom. The same case further held that until the standard of conduct or duty is established there is no question of a "conflict of material facts," that this determination is a matter of law and not one for the jury, and that the duty rests upon the plaintiff to establish this standard, 527 P.2d 835, which appellant here has failed to do.

■ Conceding arguendo, and only for the purposes of this discussion, that appellant had factually established a standard of conduct, there was an additional basis for the entry of this judgment. The evidence clearly shows that the cause of this accident was that defendant Wells tried to apply these brakes while half in and half out of the vehicle. The affidavit of Crawford sets out that if seated in the vehicle anyone "could easily apply pressure to either the accelerator or brake at will." Standing alone, this would appear to be a conclusion which would not be decisive; however, we must consider this in connection with the deposition of defendant Wells, as follows:

"Q [If] Your right foot hadn't been cocked you probably wouldn't have hit the accelerator? A. Right.

"Q Okeh [sic]. A If I had been time enough [sic] to get clear back in and hit just the brake I would have been all right."

This being in no manner contradicted under the general rule heretofore set out, Farr v. Wheeler Manufacturing Corporation, supra; 2 Hursh & Bailey, American Law of Products Liability 2d, supra; 63 Am.Jur.2d, Products Liability, supra, the plaintiff has failed in his burden in this particular.

The judgment is therefore affirmed.